IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| L. HARRISON BERNBAUM and DR. KEITH SCHRODER, <br><br> Plaintiffs, <br><br> v. <br><br> THE STANDARD FIRE INSURANCE COMPANY, a Connecticut Corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) )  No.: 1:08cv284 |

### DEFENDANT'S MOTION TO COMPEL AND FOR SANCTIONS

Defendant, THE STANDARD FIRE INSURANCE COMPANY ("Standard Fire"), by and through its attorneys, FORAN GLENNON PALANDECH & PONZI PC, pursuant to Federal Rules of Civil Procedure 37(a)(3)(B)(iv), hereby moves for the entry of an order compelling Plaintiff to produce the subject Sailboat for inspection without further repairs on May 16, 2008, when Defendant's expert is available to conduct the examination. In support hereof, Standard Fire states as follows:

### Nature Of The Dispute

This an action by L. HARRISON BERNBAUM and DR. KEITH SCHRODER ("plaintiffs'), to recover from Defendant STANDARD FIRE INSURANCE COMPANY ("Standard Fire") on a policy of marine insurance for damages allegedly sustained to the hull of Plaintiffs' Sailboat. Standard Fire has recently learned that Plaintiffs are completely re-designing and reconstructing the hull of the Sailboat and, in the process, are destroying valuable evidence. Accordingly, Standard Fire seeks entry of a Protective Order preserving the evidence until May 16, when Standard Fire's retained cause and origin expert in this litigation can have an

opportunity to personally inspect the Sailboat. Pursuant to Local Rule 37.2, movant states that Standard Fire has attempted to meet and confer on this issue with Plaintiffs' and those attempts have been unsuccessful or, as in the case of the latest attempt, ignored altogether, thereby necessitating this motion.

**Factual Background**

This litigation commenced on January 11, 2008 with the filing of Plaintiffs' Complaint at Law, which has since been dismissed by this Court twice for failure to properly allege diversity jurisdiction.  Plaintiffs' Complaint alleges that a latent manufacturing defect proximately caused the damage to the Sailboat resulting in the need for repairs for which it seeks coverage under Standard Fire's policy of marine insurance.  (See Plaintiff's Amended Complaint, attached as Exhibit A).

Prior to the commencement of this lawsuit, Standard Fire was given the opportunity to inspect the yacht during the course of its loss adjustment and performed some limited destructive testing in the form of core samples taken from various locations of the hull.  (See, Affidavit of Matthew S. Ponzi attached as Exhibit B, ¶ 6). However, these inspections occurred pre-litigation, and without any knowledge that Plaintiffs would be claiming coverage based on a latent defect theory. (See Ponzi affidavit, ¶ 6).  Furthermore, Standard Fire's retained litigation expert, Mr. Bruce Pfund, did not personally inspect the yacht during the loss adjustment process. (See Ponzi affidavit, ¶ 6).

Standard Fire learned that the entire hull was being reconstructed on April 23, 2008, when Standard Fire's counsel and its marine surveyor, Chris Kelly, performed a visual inspection of the Sailboat in drydock at Hi-Tech Boatworks in Waukegan. (See Ponzi affidavit, ¶ 3).  The purpose of the inspection was to obtain further information concerning invoices

Plaintiffs submitted to Standard Fire to patch holes in the hull made during the coring process. (See Ponzi affidavit, ¶ 3). At that time, counsel observed that reconstruction of the forward areas of the hull were substantially complete, and that a newly designed and constructed hull would be replacing the old hull. (See Ponzi affidavit, ¶ 4). Physical evidence removed from the old hull was being discarded in the process. (See Ponzi affidavit, ¶ 5). Counsel also learned that the remaining work on areas near the middle and rear of the Sailboat (aft of the keel) was planned in the upcoming weeks. (See Ponzi affidavit, ¶ 4).

Defense counsel immediately contacted expert Pfund to notify him of the hull reconstruction and to obtain dates for an on-site inspection. (See Ponzi affidavit, ¶ 7). Mr. Pfund advised that he would like to physically inspect the Sailboat before repairs were completed but he was departing on a trip out of the country and, therefore, his first available date was May 16, 2008. (See Ponzi affidavit, ¶ 7). Defense counsel contacted Plaintiffs' counsel on April 25, 2008, requesting that no structural repairs be undertaken of the areas of the Sailboat aft of the keel as this was an area that needed to be preserved for Mr. Pfund's examination. (See E-mail attached as Exhibit 1 to Ponzi Affidavit). Plaintiffs' counsel was further advised that Mr. Pfund could not examine the yacht until May 15, or May 16, 2008, due to a previously scheduled vacation. As a matter of professional courtesy, Defense counsel offered to coordinate any examination with Plaintiffs' counsel and even defined those areas of the Sailboat upon which repairs could continue during the three weeks before Mr. Pfund's examination. (See E-mail dated April 25, 2008, attached as Exhibit 2 to Ponzi Affidavit).

Defense counsel and Plaintiffs' counsel exchanged correspondence again April 27, 2008. (See E-mail attached as Exhibits 3 to Ponzi Affidavit). In summary, Plaintiffs' counsel rejected Defense counsel's request for a two week stay of structural repairs citing the pre-suit

examination and his clients' loss of the opportunity to utilize the Sailboat in various regattas during the early summer should the repairs be delayed.

On May 1, 2008, Defense counsel proposed the following protocol in order to avoid the costs associated with the filing of this Motion:

1. Plaintiffs' repairmen must notify Defendant's marine surveyor, Mr. Kelly, 72 hours in advance of any new structural work.

2. In the event that Mr. Kelly was unavailable to be present when the new work commences, the Plaintiffs' repairmen would undertake the following:
    a. outline work area and photograph prior to any work being done;
    b. thoroughly photograph the area after the outer skin is removed;
    c. save and label the outer skin and any core that is stuck to it;
    d. save the remaining core that remained intact to inner skin and keep with corresponding outer skin;
    e. thoroughly photograph outboard side of inner skin after core has been removed and prior to preparing inner skin for new laminate and/or core.

3. The parties will evenly split all reasonable charges resulting from the above activities.

Defense counsel also requested a response to the suggested protocol by 2:00 p.m. on Monday, May 5, 2008. (See letter, dated May 1, 2008, attached as Exhibit 4 to Ponzi Affidavit). As of 12:00 p.m. Tuesday, May 6, 2008, Plaintiffs' counsel had not responded to the proposed protocol, prompting Defense counsel to notify Plaintiffs' counsel of the need for this motion. (See E-mail dated May 6, 2008, attached as Exhibit 5 to Ponzi Affidavit).

Complete repairs to the cored areas of the hull, including the gunnels near the keel in addition to those cored areas aft of the keel, prior to Defendants' expert's examination of those areas would prejudice this Defendant and its counsel's ability to defend this case. Defense counsel has made a good faith effort to resolve this issue, taking into consideration the concerns of the Plaintiffs' counsel, his clients, as well as the schedule of Defendant's expert.

## ARGUMENT

It is well established that a party has a common law duty to preserve evidence, including any relevant evidence over which the party has control and reasonably knew or could reasonably foresee was material to a potential legal action. *China Ocean Shipping Co. v. Simone Metals*, 1999 U.S. Dist. LEXIS 16229, No. 97 C 2694, 1999 WL 966447, at 2 (N.D. Ill. Oct. 1, 1999). *See also Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188, 652 N.E.2d 267, 270, 209 Ill. Dec. 727 (Ill. 1995). A formal discovery request is not necessary to trigger the duty to preserve evidence. *Danis v. USN Communs., Inc.*, 2000 U.S. Dist. LEXIS 16900, No. 98 C 7482, 2000 WL 1694325, at 33 (N.D. Ill. Oct. 23, 2000). The filing of a complaint may alert a party that certain information is relevant and likely to be sought in discovery. *Cohn v. Taco Bell Corp.*, 1995 U.S. Dist. LEXIS 12645, No. 92 C 5852, 1995 WL 519968, at * 5 (N.D. Ill. Aug. 30, 1995).

There is no question that the ongoing hull reconstruction will physically alter the evidence at issue in this case. The evidence in this case *is* the old hull as Plaintiffs' are essentially removing the old hull and replacing it with a newly designed and constructed one. Once the hull reconstruction is complete, all of the structural components of the old hull will have been removed and replaced. While Standard Fire's marine surveyor, Mr. Kelly, worked with Mr. Pfund pre-litigation to perform inspections and remove core samples from certain areas of the hull, Mr. Pfund, has never personally inspected the Sailboat. Further, in light of Plaintiffs' allegations of a latent manufacturing defect, Mr. Pfund has now advised that he needs to physically examine the boat before hull reconstruction is completed. The right of a cause and origin expert to physically inspect the property for which he is rendering an opinion cannot be seriously disputed and the failure to permit such inspections has been the basis for severe sanctions. See, generally, *Jones v. Goodyear Tire and Rubber Company*, 137 F.R.D 657, 664;

1991 U.S. Dist. LEXIS 9783, **21 (C.D. Ill. 1991) and *Farley Metals, Inc. v. Barber Colman Company, et al.,* 269 Ill.App.3d 104, 110-111 (1st Dist. 1994). The inspection can be undertaken on May 16, 2008, affording Plaintiffs' ample time to complete repairs prior to the racing season.

In *Allstate Ins. Co. v. Sunbeam Corp.,* 53 F.3d 804, 806-07 (7th Cir. 1995), plaintiff's investigator disassembled a gas grill retrieved from a fire, and then disposed of its parts. The court determined this to be "unreasonable." The court found that the Plaintiff should have delayed disposal until full examination by the adverse party, especially since the plaintiff had not yet determined its own view of the fire's cause. The facts at issue are identical in this case. Defendant's expert has yet to complete a full examination of the Sailboat. Therefore, Defendant's Motion to Compel Production of the Sailboat on May 16, 2008 for examination by its expert without further repairs is warranted.

Furthermore, Plaintiffs' are themselves responsible for any potential inconvenience caused by this order. Plaintiffs' Complaint was dismissed *sua sponte* by Judge Manning's order on March 3, 2008, for failure to adequately plead diversity. Plaintiffs' were granted leave to amend. The Plaintiffs' Amended Complaint, filed on March 21, 2008, was dismissed by this Court on May 5, 2008, for Plaintiffs' failure to cure all of the defects identified in Judge Manning's March 3, 2008 order. The Plaintiffs' repeated failure to adequately plead diversity has delayed this litigation by several months and precluded holding an initial status conference wherein the issue of repairs and preservation of evidence could have been discussed. Plaintiffs' inadequate pleading should not absolve it of its duty to preserve evidence nor should it prejudice the Defendant's ability to defend.

Defense counsel has made a good faith effort to resolve its dispute with Plaintiffs' counsel on this issue without court action. (See Exhibits 2 through 5, to Ponzi Affidavit).

### SANCTIONS PURSUANT TO FRCP 37(c)

Federal Rule of Civil Procedure 37 applies where a party fails to produce an item for inspection pursuant to a discovery request even in the absence of court order. *Langley v. Union Electric Co.,* 107 F.3d 510, 514 (7th Cir. 1997). Rule 37 sanctions may only be imposed where a party displays willfulness, bad faith, or fault. *Langley,* 107 F.3d at 514. Fault is determined by the reasonableness of the conduct, or the lack thereof, that culminated in the discovery violation. *Langley,* 107 F.3d at 514. A particular sanction under Rule 37 must be proportionate to the circumstances surrounding the failure to comply with discovery. *Langley,* 107 F.3d at 515. Plaintiffs have willfully refused to preserve evidence for three weeks to enable Defendant's expert to examine the Sailboat, and have totally ignored Defendant's reasonable proposal of May 1 that would balance its need to preserve evidence against Plaintiffs' desire to complete repairs.

### CONCLUSION

Defendant seeks an order compelling Plaintiffs to produce the subject Sailboat for inspection on May 16, 2008, without further repairs, when Defendant's expert can conduct his inspection. In the alternative, Defendant seeks a Protective Order requiring Plaintiffs to cease all repairs to the cored areas of the hull, including the gunnels (sides) near the keel in addition to those cored areas aft of the keel of the Sailboat and to adopt the protocol proposed in Exhibit 5. Finally, Defendant seeks from Plaintiffs reasonable expenses incurred in making this motion, pursuant to Federal Rule of Civil Procedure 37.

WHEREFORE, THE STANDARD FIRE INSURANCE COMPANY demands entry of the requested order pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv) as well as the reimbursement of reasonable attorneys' fees incurred by Defendant in the drafting, filing, and hearing on this Motion, as well as granting such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

FORAN GLENNON PALANDECH
 & PONZI PC

/s/ Matthew S. Ponzi
Matthew S. Ponzi
Thomas B. Orlando
150 South Wacker Drive, Suite 1100
Chicago, IL 60606
312.863.5000
312.863.5099/fax
mponzi@fgpp.com
torlando@fgpp.com

Attorneys for THE STANDARD FIRE INSURANCE COMPANY

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above document was filed electronically with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court (with a copy to be mailed to any individuals who do not receive electronic notice from the Clerk) this 7th day of May, 2008, to:

Leland W. Hutchinson, Jr.
Gina M. DiBella
FREEBORN & PETERS LLP
311 S. Wacker Dr., Suite 3000
Chicago, IL 60606
312.360.6000
lhutchinson@freebornpeters.com
gdibella@freebornpeters.com

                                                          /s/ Matthew S. Ponzi
                                                          Matthew S. Ponzi
                                                          Thomas B. Orlando
                                                          FORAN GLENNON PALANDECH
                                                           & PONZI PC
                                                          150 South Wacker Drive, Suite 1100
                                                          Chicago, IL 60606
                                                          312.863.5000
                                                          312.863.5099/fax
                                                          mponzi@fgpp.com
                                                          torlando@fgpp.com