## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| L. HARRISON BERNBAUM and DR. KEITH SCHRODER, | ) ) ) | |
| Plaintiffs, | ) ) | No.: 1:08cv284 |
| v. | ) ) | |
| THE STANDARD FIRE INSURANCE COMPANY, a Connecticut Corporation, | ) ) ) | |
| Defendants. | ) ) | |

### AFFIDAVIT OF MATTHEW S. PONZI

Before me, the undersigned notary, on this day, personally appeared Matthew S. Ponzi, a person whose identity is known to me. After I administered an oath to him, upon his oath he stated:

1. My name is Matthew S. Ponzi. I am a partner in the law firm of Foran Glennon Palandech & Ponzi PC in Chicago, Illinois. I am over the age of 21 and am legally competent to execute this affidavit. I have personal knowledge of the facts stated herein, they are true and correct to the best of my knowledge, information and belief and, if called upon, I could competently testify thereto.

2. I was retained by Defendant Standard Fire Insurance Company ("Standard Fire") to defend their interests in the captioned matter.

3. On Wednesday, April 23, I attended the inspection of Plaintiffs' Sailboat at the Hi-Tech Boatworks in Waukegan, Illinois. Accompanying me on the inspection was Chris Kelly, a marine surveyor retained by Standard Fire, and Steve Bailey, a fiberglass contractor. The purpose of our inspection was to have Mr. Bailey prepare an estimate concerning the cost of



EXHIBIT
B

repairing and patching holes in the hull created by Mr. Kelly during previous inspections prior to the commencement of this action.

4.     During the inspection I learned that the entire hull was in the process of being re-designed and reconstructed. I further learned that structural repairs to the forward areas of the hull were substantially complete. I observed that repairs aft (towards the stern of the ship) had not yet commenced. I learned that hull repairs aft would commence within the next several weeks.

5.     The owner of Hi-Tech Boatworks, Mr. Billy McCaffery, advised that while he was photographing the repair process, he was generally not preserving the structural elements removed from the old hull.

6.     Immediately upon returning to the office I contacted Standard Fire's retained cause and origin expert, Bruce Pfund of Pfund Special Projects LLP, Westerly, Rhode Island. Mr. Pfund had previously worked with Mr. Kelly on assessing the cause and extent of damage to the Sailboat during Standard Fire's loss adjustment. However, Mr. Pfund had not yet personally inspected the Sailboat. Furthermore, during the loss adjustment the focus of the investigation was on hull cracking in the forward area of the Sailboat allegedly caused by heavy seas. There was no allegation by Plaintiffs that the entire hull suffered from a latent manufacturing defect until this lawsuit was filed.

7.     I advised Mr. Pfund of the timetable for the hull reconstruction and Mr. Pfund requested an opportunity to personally inspect the Sailboat before the repairs were completed. Mr. Pfund, however, was leaving Friday, April 25, 2008 for a pre-planned vacation out of the country and was unavailable for the inspection until May 16.

8.     Mr. Pfund was very concerned that the repairs would compromise evidence necessary for his assessment of Plaintiffs' latent manufacturing defect theory of coverage. Mr.

2

Pfund believed that the failure to preserve the evidence could compromise his ability to testify as to the cause of loss and the proper scope of repair.

9.     Following my conversation with Mr. Pfund, I contacted Plaintiffs' counsel, Leland Hutchinson, on Friday morning, April 25, 2008. A true and correct copy of my e-mail is attached hereto as Exhibit 1.

10.    I advised Mr. Hutchinson that we wished to have Mr. Pfund inspect the Sailboat on May 15 or 16. I further requested that no repairs aft be undertaken that would compromise the inner and outer skin of the Sailboat prior to Mr. Pfund's inspection. I further advised Mr. Hutchinson that in order to balance the desire of the owners to put the Sailboat back in service, we were willing to work with him and his clients to "reach a mutually acceptable arrangement."

11.    By return e-mail, Mr. Hutchinson requested that we more specifically define those areas we needed preserved for Mr. Pfund's inspection. In response, in the afternoon of April 25, 2008, I sent an e-mail to Mr. Hutchinson, a true and correct copy of which is attached as Exhibit 2, specifying the areas requiring preservation. Again, I reiterated that our proposal would not prevent the continuation of the forward repair work that was already underway as well as any prep work near and aft of the keel, such as the removal of nonstructural elements above the hull.

12.    On Sunday, April 27, 2008, Mr. Hutchinson responded by e-mail, a true and correct copy of which is attached as Exhibit 3. Mr. Hutchinson, on behalf of his clients, rejected any stoppage of the ongoing repair work. He cited the need to repair the Sailboat in time for a regatta taking place on June 13-15. Mr. Hutchinson offered to have Standard Fire's expert "run any tests you would like beginning tomorrow," which, of course, was unhelpful since Mr. Pfund was already out of the country.

3

13.    Nevertheless, in an effort to be reasonable and attempt to reach a compromise, I sent a letter dated May 1, 2008 by e-mail to Mr. Hutchinson, a true and correct copy of which is attached as Exhibit 4.  The letter proposed that Mr. Kelly be notified 72 hours in advance of any further structural work, and that if Mr. Kelly was unavailable, High-Tech could perform the work but undertake certain specified steps to preserve any evidence.

14.    In my letter, I requested that Mr. Hutchinson advise me no later than 2:00 p.m. on Monday, May 5, whether he agreed with this proposal.

15.    I received no response from Mr. Hutchinson, his associate, Ms. DiBella (who was also copied on my letter), or his client.  I therefore notified them of our intent to seek relief from the court.  A true and correct copy of my e-mail dated May 6, 2008 is attaches as Exhibit 5. Counsel did not respond to this e-mail either.

Further affiant sayeth not.

Dated:         May 7, 2008                          _____
                                                    Matthew S. Ponzi

Subscribed and sworn to before me
this 7th day of May, 2008.

_____
Notary Public

OFFICIAL SEAL
ELIZABETH MUSGRAVE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/23/10

4

## Musgrave, Elizabeth

| | |
|---|---|
| **From:** | Ponzi, Matthew S. |
| **Sent:** | Friday, April 25, 2008 10:14 AM |
| **To:** | 'Hutchinson, Leland W.' |
| **Cc:** | 'ckelly@chriskellyassociates.com'; 'bpspecialprojects@cox.net' |
| **Subject:** | Bernbaum |

Lee,

Upon inspecting the yacht yesterday I was a little surprised to see that repairs had already commenced without any prior notice to us. The area being worked upon (front) is one which we had previously inspected and taken samples, and apparently Billy McCaffrey of HiTech has taken steps to photo document the process. We would, of course, like to see all of Billy's photos and ask that any structural items removed from the hull to date (inner and outer skin, core etc) be preserved until further notice.

With regard to the portion of the boat aft of the keel, repairs have not yet commenced. This also happens to be an area where our experts have not had much opportunity to conduct investigation and testing. I would like to arrange for our expert, Bruce Pfund, to inspect the boat before the aft repairs destroy valuable evidence. Bruce's earliest available dates are May 15 and 16. Until then, I would respectfully request that no repairs aft of the keel be undertaken that would compromise the inner and outer skin of the boat in that area.

We understand the desire of the owners to get the boat back in the water. We certainly want to be respectful of that desire and of Mr. McCaffrey's schedule. I imagine there is prep work that can be undertaken that would not compromise the evidence, and we are willing to work with you and your clients to reach a mutually acceptable arrangement.

Please let me have your thoughts on this at your earliest opportunity. Thanks.

Matthew S. Ponzi
Foran Glennon Palandech & Ponzi PC
150 South Wacker Drive
Suite 1100
Chicago, IL 60606
312.863.5070
312.863.5099/fax
mponzi@fgpp.com

EXHIBIT
1

## Musgrave, Elizabeth

| | |
|---|---|
| **From:** | Ponzi, Matthew S. |
| **Sent:** | Friday, April 25, 2008 11:12 AM |
| **To:** | 'Hutchinson, Leland W.'; Hank Bernbaum |
| **Cc:** | Whitney Hutchinson |
| **Subject:** | RE: Bernbaum |

Lee,

The duty to preserve evidence goes way beyond the insurance policy. A party has a common law duty to preserve evidence, including any relevant evidence over which the party has control and reasonably knew or could reasonably foresee was material to a potential legal action. _China Ocean Shipping Co. v. Simone Metals_, 1999 U.S. Dist. LEXIS 16229, No. 97 C 2694, 1999 WL 966447, at 2 (N.D. Ill. Oct. 1, 1999). _See also Boyd v. Travelers Ins. Co._, 166 Ill. 2d 188, 652 N.E.2d 267, 270, 209 Ill. Dec. 727 (Ill. 1995).

A formal discovery request is not necessary to trigger the duty to preserve evidence. _Danis v. USN Communs., Inc._, 2000 U.S. Dist. LEXIS 16900, No. 98 C 7482, 2000 WL 1694325, at 33 (N.D. Ill. Oct. 23, 2000). The filing of a complaint may alert a party that certain information is relevant and likely to be sought in discovery. _Cohn v. Taco Bell Corp._, 1995 U.S. Dist. LEXIS 12645, No. 92 C 5852, 1995 WL 519968, at * 5 (N.D. Ill. Aug. 30, 1995).

I hate to have to rush into court on something so basic as this. Again, we are not looking for a general cessation of work, but merely some assurance that the inner and outer skin aft of the keel will be preserved for three weeks. I am not sure I can be more specific than this, but I will forward your comments to our experts and hopefully be able to provide a more specific response.

As to the testing damage, I am not sure where you received your information that my client admits it "underpaid", but your information is incorrect. Furthermore, from what I could see, no "repairs" of the testing locations were ever made, and the overall repair work being performed (and for which you are presumably claiming in this lawsuit) makes repairing the testing locations moot anyway. That said, Chris Kelly is reviewing his earlier estimate and will advise if there was anything he missed. He did mention while we were at the site that his estimate did not include the 10.25 hours of HiTech time incurred during the inspection process.

Matthew S. Ponzi
Foran Glennon Palandech & Ponzi PC
150 South Wacker Drive
Suite 1100
Chicago, IL 60606
312.863.5070
312.863.5099/fax
mponzi@fgpp.com

---

**From:** Hutchinson, Leland W. [mailto:lhutchinson@freebornpeters.com]
**Sent:** Friday, April 25, 2008 10:32 AM
**To:** Ponzi, Matthew S.; Hank Bernbaum
**Cc:** Whitney Hutchinson
**Subject:** RE: Bernbaum

EXHIBIT
2

Matt,

Once your client denied coverage of our client's claim, I am not sure what duty, contractual or otherwise, our client had not to repair the boat so as to make it again usable. If you believe otherwise, perhaps you can enlighten me on your reasoning. I do believe that I have mentioned in our early conversations that the boat was being repaired.

I will forward your request to my client for consideration, but I sincerely doubt that a general cessation of work will be acceptable, even for the period that you mention. If you could provide specific details of what test(s) your expert wishes to run and what precise condition(s) should be preserved between now and May 16, 2008, that may help us to rearrange the on-going work in a manner to accommodate your request without delaying the repair project or the launch date on which the boat again is usable.

On a related matter, your client, I believe, admits that it under paid our client for the damage caused by prior inspections and testing. Can you authorize an immediate payment of that undisputed amount? If not, please explain why.

Lee

## Leland W. Hutchinson
*Partner*
Freeborn & Peters LLP
311 S. Wacker Dr., 3000
Chicago, IL 60606-6677
(312) 360-6503
(312) 360-6572 (Fax)

## Confidentiality Notice:
This message may contain legally privileged information intended solely for the direct addressee(s). Disclosure or use by others is strictly prohibited. Please call if you have received this message in error.

## Circular 230 Disclaimer:
This message and any attachments hereto cannot be used for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code.

---

**From:** Ponzi, Matthew S. [mailto:mponzi@fgpp.com]
**Sent:** Friday, April 25, 2008 10:14 AM
**To:** Hutchinson, Leland W.
**Cc:** ckelly@chriskellyassociates.com; bpspecialprojects@cox.net
**Subject:** Bernbaum

Lee,

Upon inspecting the yacht yesterday I was a little surprised to see that repairs had already commenced without any prior notice to us. The area being worked upon (front) is one which we had previously inspected and taken samples, and apparently Billy McCaffrey of HiTech has taken steps to photo document the process. We would, of course, like to see all of Billy's photos and ask that any structural items removed from the hull to date (inner and outer skin, core etc) be preserved until further notice.

With regard to the portion of the boat aft of the keel, repairs have not yet commenced. This also happens to be an area where our experts have not had much opportunity to conduct investigation and testing. I would like to arrange for our expert, Bruce Pfund, to inspect the boat before the aft repairs destroy valuable evidence. Bruce's earliest available dates are May 15 and 16. Until then, I would respectfully request that no repairs aft of the keel be undertaken that would compromise the inner and outer skin of the boat in that area.

We understand the desire of the owners to get the boat back in the water. We certainly want to be respectful of that desire and of Mr. McCaffrey's schedule. I imagine there is prep work that can be undertaken that would not compromise the

evidence, and we are willing to work with you and your clients to reach a mutually acceptable arrangement.

Please let me have your thoughts on this at your earliest opportunity. Thanks.

Matthew S. Ponzi
Foran Glennon Palandech & Ponzi PC
150 South Wacker Drive
Suite 1100
Chicago, IL 60606
312.863.5070
312.863.5099/fax
mponzi@fgpp.com

## Musgrave, Elizabeth

| | |
|---|---|
| **From:** | Hutchinson, Leland W. [lhutchinson@freebornpeters.com] |
| **Sent:** | Sunday, April 27, 2008 7:29 PM |
| **To:** | Ponzi, Matthew S. |
| **Cc:** | Di Bella, Gina M.; Whitney Hutchinson; Hank Bernbaum |

**Subject:** RE: Bernbaum

Matt,

I am sorry to say that we are unwilling to stop the on-going repair work to wait three weeks before resuming. Before starting the repair work, we were under the impression that Travelers had conducted all of the tests and inspections that it required as part of the detailed inspection that lead to the denial of coverage last December.

Because of the damage to the boat, Mr.. Bernbaum missed all of last season's sailing. The sailing season in Chicago is short. Most competitive racing occurs between early June and mid-August. The major events of the year are the NOODs, the Mackinac Race and the Verve Cup. The first of these, the North American Offshore One Design Regatta is June 13-15. It is a very critical regatta. The current repair work will result in the boat being launched just in time to compete in this event. The delays which you request would result in missing all sailing prior to early to mid-July.

We are happy to permit you or your expert to run any tests you would like beginning tomorrow, as long as you agree to share all copies of the data with us. I am sorry that your expert has other time commitments, but I am hard pressed to believe that whatever tests he requires could not be run under the supervision of his firm (or another) and then reviewed by him at his convenience.

In our view, the balance of inconveniences favors you having the test arranged earlier. Unfortunately, I will ne in NYC this week. Please contact my associate, Gina DiBella with any questions.

Lee

---

**From:** Ponzi, Matthew S. [mailto:mponzi@fgpp.com]
**Sent:** Friday, April 25, 2008 1:12 PM
**To:** Hutchinson, Leland W.
**Subject:** Bernbaum

Lee,

Here is the best we can do at defining those areas we need preserved for Mr. Pfund's inspection on May 16:

The remaining cored areas of the hull must remain intact for inspection. This would include the gunnels (sides) near the keel in addition to those cored areas aft of the keel.

This would not prevent the forward work that is already underway, as well as any prep work near and aft of the keel, such as the removal of the non-structural elements above the hull.

If you believe this description can be improved upon, I'm all ears. Otherwise, please let me know whether this is something that we can reach agreement on or not.

Matthew S. Ponzi
Foran Glennon Palandech & Ponzi PC
150 South Wacker Drive
Suite 1100
Chicago, IL 60606
312.863.5070

EXHIBIT

3

312.863.5099/fax
mponzi@fgpp.com

**Musgrave, Elizabeth**

| | |
|---|---|
| **From:** | Musgrave, Elizabeth |
| **Sent:** | Thursday, May 01, 2008 3:30 PM |
| **To:** | 'lhutchinson@freebornpeters.com'; 'gdibella@freebornpeters.com' |
| **Cc:** | 'ckelly@chriskellyassociates.com'; 'Pagones,Peter Louis'; 'dllewell@travelers.com'; Ponzi, Matthew S. |
| **Subject:** | Bernbaum v. Standard Fire |



MSP to Hutchinson
050108.pdf (...

Dear Mr. Hutchinson and Ms. DiBella:

Please see the attached letter from Matt Ponzi.  Should you have any questions or comments, please do not hesitate to call.  Thank you.

Elizabeth Musgrave
Assistant to Matthew S. Ponzi
Foran Glennon Palandech & Ponzi PC
150 South Wacker Drive
11th Floor
Chicago, Illinois 60606
312.863.5081
312.863.5099/Fax
emusgrave@fgpp.com

1



# FORANGLENNONPALANDECH&PONZI

May 1, 2008

**VIA E-MAIL**

Leland W. Hutchinson, Jr.
Gina M. DiBella
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606

> Re: *L. Harrison Bernbaum, et al. v. The Standard Fire Insurance Company*
> Case No.:    1:08-cv-284

Dear Lee and Gina:

This is in response to Lee's e-mail of Sunday, April 27, and is our attempt to meet and confer concerning the preservation of evidence in this case.

In order to avoid the expense of seeking immediate relief from the court, we are willing to consider the following steps for the preservation of evidence between now and Mr. Pfund's inspection on May 16:

1.  Hi Tech must notify Chris Kelly (by e-mail and telephone) 72 hours in advance of any new structural work. Mr. Kelly's contact information is as follows:

    > Chris Kelly, AMS, CMI
    > Chris Kelly & Associates, LLC
    > Cell/Ofc: (800) 299-3197
    > ckelly@chriskellyassociates.com

2.  If Mr. Kelly indicates that he is unavailable to be present when the new work commences, Hi Tech will undertake the following:

    (a)  outline work area and photograph prior to any work being done;
    (b)  thoroughly photograph the area after the outer skin is removed;
    (c)  save and label the outer skin and any core that is stuck to it;

**Matthew S. Ponzi**, *Attorney at Law*, direct 312.863.5070, email mponzi@fgpp.com
Foran Glennon Palandech & Ponzi PC   *Attorneys at Law*   Chicago | Newport Beach
150 South Wacker Drive, Suite 1100, Chicago, Illinois 60606, tel 312.863.5000, fax 312.863.5099, www.fgpp.com

Leland W. Hutchinson, Jr.
Gina M. DiBella
May 1, 2008
Page 2

    (d)    save the remaining core that remained intact to inner skin and keep with corresponding outer skin;

    (e)    thoroughly photograph outboard side of inner skin after core has been removed and prior to preparing inner skin for new laminate and/or core.

3.    The parties will evenly split all reasonable Hi Tech charges resulting from the above activities.

Please advise me no later than 2:00 p.m. on **Monday, May 5** whether you are in agreement with the above protocol. Thank you very much for your prompt attention to the foregoing.

Very truly yours,

Foran Glennon Palandech & Ponzi PC

Matthew S. Ponzi

MSP:em

cc:    Chris Kelly
       Don Llewellyn
       Peter Pagones

**Musgrave, Elizabeth**

| | |
|---|---|
| **From:** | Ponzi, Matthew S. |
| **Sent:** | Tuesday, May 06, 2008 12:07 PM |
| **To:** | 'lhutchinson@freebornpeters.com'; 'gdibella@freebornpeters.com' |
| **Cc:** | 'ckelly@chriskellyassociates.com'; 'Pagones,Peter Louis'; 'dllewell@travelers.com' |
| **Subject:** | RE: Bernbaum v. Standard Fire |

Lee and Gina,

Having receieved no response to this letter, we are proceeding with a TRO. I will advise you of the hearing date.

Matthew S. Ponzi
Foran Glennon Palandech & Ponzi PC
150 South Wacker Drive
Suite 1100
Chicago, IL 60606
312.863.5070
312.863.5099/fax
mponzi@fgpp.com


-----Original Message-----
From: Musgrave, Elizabeth
Sent: Thursday, May 01, 2008 3:30 PM
To: 'lhutchinson@freebornpeters.com'; 'gdibella@freebornpeters.com'
Cc: 'ckelly@chriskellyassociates.com'; 'Pagones,Peter Louis'; 'dllewell@travelers.com'; Ponzi, Matthew S.
Subject: Bernbaum v. Standard Fire

Dear Mr. Hutchinson and Ms. DiBella:

Please see the attached letter from Matt Ponzi. Should you have any questions or comments, please do not hesitate to call. Thank you.

Elizabeth Musgrave
Assistant to Matthew S. Ponzi
Foran Glennon Palandech & Ponzi PC
150 South Wacker Drive
11th Floor
Chicago, Illinois 60606
312.863.5081
312.863.5099/Fax
emusgrave@fgpp.com

**EXHIBIT**
**5**