**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| L. HARRISON BERNBAUM and DR. KEITH SCHRODER, <br>     Plaintiffs, <br><br> v. <br><br> THE STANDARD FIRE INSURANCE COMPANY, <br>     Defendant. | 08 C 284 |

**MEMORANDUM AND ORDER**

Plaintiffs L. Harrison Bernbaum and Keith Schroder own a Farr 395 racing sailboat named *Chaos*, and seek to recover for alleged property loss under the first-party property portion of a marine insurance policy issued by defendant The Standard Fire Insurance Company. Standard Fire contends that the plaintiffs' suit is untimely and that it is entitled to summary judgment. For the following reasons, Standard Fire's motion is granted.

**I.**     **Background**

    **A.**     **The Parties**

L. Harrison Bernbaum and Keith Schroder are Illinois citizens, and Standard Fire is a Connecticut corporation with its principal place of business in Connecticut.[1] The damage to

---

[1] Standard Fire's Rule 56 statement indicates that the plaintiffs are Illinois residents. The court, however, twice required the plaintiffs to amend their complaint to provide citizenship information, and they eventually did so. As the court has previously observed, citizenship, not residency, is what matters for diversity jurisdiction. *Guaranty National Title Co. v. J.E.G. Associates*, 101 F.3d 57, 59 (7th Cir. 1996). The complaint includes citizenship allegations for the plaintiffs, Standard Fire has not challenged these allegations, and Standard Fire directed the court to the complaint's citizenship allegations to support its allegations about the plaintiffs' state of residency. The court thus finds that the record shows that the plaintiffs are, in fact, Illinois citizens. It also urges counsel to focus on citizenship, as opposed to residency, in any future cases.

*Chaos* exceeds $75,000.

### B. The Insurance Policy

Standard Fire insured *Chaos* under a policy of marine insurance, Policy No. 945707517-840-1 ("Policy"), with effective dates of January 1, 2006, to January 1, 2007. Bermbaum is the named insured on the Policy, and Schroder is an additional named insured. The Policy's amendatory endorsement contains a one-year contractual suit limitation clause that provides:

> SUIT AGAINST US
>
> No action will be brought against us unless there has been full compliance with all policy provisions. Such action must be started within one year after the loss or damage occurs, plus a period of time equal to the number of days from the date when the proof of loss is filed until the date the claim is denied in whole or in part.

The plaintiffs never filed a proof of loss with Standard Fire.

The Policy also contains a contractual non-waiver provision that provides:

> RESERVATION OF RIGHTS
>
> When we investigate, compromise, or pay any claim, it shall not be construed to admit liability either by you or us.

### C. The Damage to *Chaos*

It is undisputed that an "internal structural component of the sailboat" failed during the summer of 2006. The parties point to two possible dates, although they disagree as to when the damage actually occurred: (1) on or about July 23, 2006, when *Chaos* encountered heavy weather conditions and rough seas while participating in the annual race from Chicago to Mackinac Island; and/or (2) during a two-day regatta near Milwaukee that began on August 12,

2006. The plaintiffs did not have *Chaos* professionally inspected after either the Mackinac race or the Milwaukee regatta and continued to use the sailboat for the balance of the 2006 sailing season.

### D. The Plaintiffs' Insurance Claim

According to the plaintiffs, in March or April of 2007, they discovered that their sailboat's hull was cracked. Bernbaum and his crew member, Jack Amedio, each called the plaintiffs' insurance broker, Deane Tan. Based on those conversations, the plaintiffs concluded at that time that there were no grounds for an insurance claim. Thus, they took *Chaos* to Hi-Tech Boatworks in Waukegan for repairs without pursuing an insurance claim.

While *Chaos* was in the shop, the owner of Hi-Tech Boatworks posited that the damage earlier that summer happened because the sailboat was defective. He thus told Bernbaum to pursue an insurance claim for "latent damage caused by a manufacturing defect." On July 26, 2007, Bernbaum e-mailed Tank and told him to notify Standard Fire of a claim. Standard Fire was first notified of the plaintiffs' insurance claim on August 2, 2007.

Standard Fire assigned Donald Llewellyn, a Technical Specialist in the Yacht Unit of Travelers Companies, Inc., to investigate and adjust the plaintiffs' claim. On August 7, 2007, Llewellyn sent a letter to Bernbaum which stated, among other things, that:

> We are still involved in the investigation into the failure and have assigned Chris Kelly[,] an independent marine surveyor[,] to ascertain the exact cause of the hull structural damages so that we may determine if coverage can be provided. This is not a denial of payment for your claim. We simply need to investigate the loss and ascertain if coverage can be provided.
>
> Accordingly, please be advised that Travelers will continue to investigate the allegations with the full understanding that by doing so we are not waiving our right to deny coverage at a later time. No action by Travelers in investigating,

monitoring or attempting to resolve this claim should be considered an estoppel or waiver of Travelers['] right to decline your claim with regard to insurance coverage limitations described herein or later discovered in the course of resolving this claim.

Standard Fire investigated the claim from August 2, 2007, until December 10, 2007. The investigation included an inspection by a certified marine surveyor and a construction expert. On December 10, 2007, Standard Fire sent the plaintiffs a letter denying their claim. The letter indicated that Standard Fire's experts had concluded that the damage to the hull was caused by "loads experienced during racing in reported heavy weather that exceeded the local strength of the vessel's construction" and thus fell within the "wear and tear" policy exclusion. It also stated that the plaintiffs had failed to comply with the Policy's "notice of loss" provision because they did not place Standard Fire on notice of the damage within a year after it had occurred and began repairs before Standard Fire had an opportunity to inspect the sailboat. The letter ended by advising the plaintiffs that:

> There may be other terms, conditions and exclusions in the policy that apply to this claim. Our reference to specific provision(s) of your policy does not, nor is intended to, waive any of the rights that Travelers may have under the terms of your insurance policy or at law. All rights which Travelers may have under the terms of your insurance policy or at law are specifically reserved. We expressly do not waive our right to deny coverage for any other valid reason.

### E. The Filing of the Plaintiffs' Complaint

The plaintiffs filed the complaint in this case on January 11, 2008. After amending the jurisdictional allegations in the complaint twice at the court's direction, the plaintiffs filed a second amended complaint. In the second amended complaint, the plaintiffs alleged that "on or about July 23, 2006," heavy weather conditions caused an "internal structural component of the

sailboat" to fail.[2] According to the plaintiffs, "because the damages to the sailboat were caused by exposure to heavy weather on or about July 23, 2006, they were in fact the result of a single fortuitous occurrence and are not within the policy's coverage exclusion for wear and tear."

## II. Discussion

### A. Standard for A Motion For Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id*.

### B. Timeliness of the Plaintiffs' Federal Lawsuit

Provisions in insurance policies that require insureds to file suit within one year after the loss occurs are enforcable in Illinois. *See Koclanakis v. Merrimack Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir. 1990) (applying Illinois law and enforcing insurance policy containing a

---

[2] In the plaintiffs' supplemental facts, however, they assert that the hull damage was caused by a manufacturing defect. In addition, they contend that during the Milwaukee regatta on August 12 and 13, 2006, *Chaos* ran into some strong wind and large waves and the crew heard a cracking noise emanating from the bow area.

provision requiring the insureds to sue within one year after the loss occurred). Thus, Standard Fire stresses that under the Policy, its insured must file suit "within one year after the loss or damage occurs, plus a period of time equal to the number of days from when the date proof of loss is filed until the date the claim is denied in whole or in part." It is undisputed that the plaintiffs did not file a proof of loss, so this case is timely only if the damage occurred on or before January 11, 2007, since this case was filed on January 11, 2008.

The parties disagree as to whether there was, in fact, any latent defect in the sailboat that existed at the time the plaintiffs took possession of *Chaos* and made the sailboat overly susceptible to damage while in use. They also disagree about the condition of *Chaos* after the July 23, 2006, Chicago to Mackinac Island race, and whether *Chaos* suffered any damage during the two-day regatta near Milwaukee that began on August 12, 2006. However, the damage to *Chaos* occurred on one of these dates, both of which are prior to January 11, 2007.

The plaintiffs never squarely address the fact that all of the possible dates when the damage occurred are more than one year prior to filing suit. Instead, they contend that this case is timely because the damage could have occurred within a year prior to August 2, 2007, when they provided Standard Fire with notice of their claim. Alternatively, they assert that Standard Fire waived the one-year suit limitation in the Policy because after the plaintiffs submitted their claim, Standard Fire "did not either deny coverage or specifically reserve the right to do so based on timeliness grounds." Response at 6.

The Policy, however, provides that "[n]o action will be brought against us unless there has been full compliance with all policy provisions. Such action must be started within one year after the loss or damage occurs requires the insured to file suit . . . " Filing "an action" against

Standard Fire within one year after a loss is clearly not the same thing as providing notice of a claim within one year after a loss. Thus, the plaintiffs' position is flatly contradicted by the plain language of the pertinent policy provision.

The plaintiffs' waiver argument is similarly unsupported by the record. "In Illinois, 'waiver' is a voluntary and intentional relinquishment of a known right" and "may be express through agreement or implied through conduct." *PPM Finance, Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004). A party relying on implied waiver must point to an "act relied on to constitute the waiver" that is "clear, unequivocal and decisive." *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, — F.3d — , No. 07-3660, 2009 WL 259678, at *6 (7th Cir. Feb. 5, 2009).

Here, the Policy provides that Standard Fire's investigation of a claim is not tantamount to a final decision to grant coverage, as it provides:

RESERVATION OF RIGHTS

When we investigate, compromise, or pay any claim, it shall not be construed to admit liability either by y

Moreover, Standard Fire repeatedly told the plaintiffs, in writing, that it reserved its right to deny coverage. Specifically, Standard Fire's August 7, 2007, letter noted that it was still investigating the plaintiffs' claim and stated:

> Accordingly, please be advised that Travelers will continue to investigate the allegations with the full understanding that by doing so we are not waiving our right to deny coverage at a later time. No action by Travelers in investigating, monitoring or attempting to resolve this claim should be considered an estoppel or waiver of Travelers['] right to decline your claim with regard to insurance coverage limitations described herein or later discovered in the course of resolving this claim.

Second, Standard Fire's December 10, 2007, letter stated:

> There may be other terms, conditions and exclusion in the policy that apply to this claim. Our reference to specific provision(s) of your policy does not, nor is intended to, waive any of the rights that Travelers may have under the terms of your insurance policy or at law. All rights which Travelers may have under the terms of your insurance policy or at law are specifically reserved. We expressly do not waive our right to deny coverage for any other valid reason.

The language of the Policy, coupled with Standard Fire's repeated reservation of rights, is simply not a voluntary and intentional relinquishment of any of Standard Fire's rights under the Policy, let alone a "clear, unequivocal and decisive" relinquishment. *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 2009 WL 259678, at *6. Indeed, the plaintiffs' argument flies in the face of letters from Standard Insurance stating that it reserved its right to deny coverage based on "insurance coverage limitations described herein [Standard Fire's August 7, 2007, letter] or later discovered in the course of resolving this claim" and advising the plaintiffs that "[a]ll rights which [the insurer] may have under the terms of your insurance policy or at law are specifically reserved. We expressly do not waive our right to deny coverage for any other valid reason."

In sum, Standard Fire's argument based on the one-year suit provision is clearly supported by the plain language of the Policy, the plaintiffs' arguments about the date that they provided notice of their claim are irrelevant because the Policy includes a one-year statute of limitations that requires an insured to *file suit* (not provide notice) within that limitations period, and the plaintiffs' waiver argument borders on the frivolous. Accordingly, the court finds that the one-year suit provision bars this action.

## III. Conclusion

For the reasons stated above, this action is time-barred. Accordingly, Standard Fire's motion for summary judgment [#40] is granted. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.


DATE: February 23, 2009

_/s/ Blanche M. Manning_
Blanche M. Manning
United States District Judge